Good morning, Your Honors, and may it please the Court. Sam Diamant on behalf of Petitioner Mr. Feng Sun. My firm was appointed as counsel for Mr. Sun under the Ninth Circuit's pro bono program. I'd like to reserve two minutes of my time for rebuttal. Watch the clock. We'll try to help you. Your Honors, Mr. Sun seeks the asylum of the United States from physical and economic persecution in his native country of China. In this Court's review of the Board of Immigration Appeals' decision denying his asylum, the BIA committed reversible error in four primary ways. First, Mr. Sun's asylum application was filed six months following the final change circumstance supporting his eligibility for asylum. And what might those be, counsel? What are the change circumstances? Your Honor, the change – It was well past the first year, so he has to have change circumstances under the law in order to have a timely application. Correct, Your Honor. So Mr. Sun's political enemies crafted a carefully calculated plan to obtain his removal to China through several instances of tips to immigration authorities, and those culminated in Mr. Sun's arrest in July 2013 by ICE after he had been tracked by affiliates of an agent of a Chinese business who was seeking his removal back to China so that he could – Counsel, didn't the immigration judge find basically that your client wasn't credible, including because your client was a knowing participant in various fraudulent schemes? I don't believe there was an explicit adverse credibility determination, Your Honor, and I believe the government has conceded that on the footnote on page 32 of the government's brief. The ILJ said it cast doubt on your client's credibility, his weak moral compass, his providing false information under oath, and false tax returns. Correct, Your Honor, but on other facts, the court did find – the immigration courts did find Mr. Sun to be credible, and those are the facts that go to the heart of his asylum application. So those are the labor abuses by Legendstone on Guam, and those are the campaign of harassment by individuals on Guam who are connected with Chinese enterprises that are government-owned. Counsel, your client was denied a U visa, right? That's correct, Your Honor. He was trying to use what – I suppose what you call cooperation as a wedge to get help with the immigration issues, and he was denied. So what we're really dealing with here is he was hired by this entity on Guam. His boss fell out with the uncle, as I recall correctly, and it was because of that family dispute that he created this problem. But the reality was, if there was a problem, it was because your client was violating U.S. law. So I'd like to address a few points there, Your Honor, if I may. First, the U visa. So Mr. Sun was attempting to lawfully stay in the United States, and he was doing that through cooperation with U.S. authorities to expose the illicit conduct of these Chinese government-affiliated entities through submitting hundreds and hundreds of pages of evidence to the U.S. Attorney's Office and other agencies throughout 2012 and 2013. He thought that that was his best way to lawfully stay in the United States, and when he learned that he could apply for asylum based on the very same facts that were underlying his application for a U visa, he timely applied within six months. But counsel, I'm sure you know, as a lawyer from a very big firm, sudden knowledge of the law is no excuse. There's plenty of case law that backs that up. So the fact that he suddenly discovered he was eligible to file for asylum doesn't help him a bit in terms of the timing, does it? Well, there is law in the Ninth Circuit, Your Honor, the Vahora and the Wakari cases, that say that the exceptions to the one-year rule for filing an asylum application, which are changed circumstances in extraordinary circumstances, should be construed liberally. But the one that you're talking about, if I understand it correctly, is you're saying that your client suddenly discovered he was eligible for asylum. There's a one-year statute for filing for asylum, and that was many, many years ago. So he suddenly discovers this, but it was many, many years ago, and the case law says that is not a changed circumstance. So where do you go from there? So they were continuing. The case law also says that it need not be just one factor, and immediately he knows that he needs to apply. The applicant can wait for... There's many factors. It doesn't really matter, does it? Because if he waits all those years and then suddenly he's got these factors and then he applies for asylum and the primary basis of it is that he's discovered the law permits him to do that, our case law says that doesn't work. So in July 2013, for the first time, Mr. Sun knew with certainty that he was very likely to be removed back to China and that his enemies, political enemies, on account of protected grounds, which is his labor speech against these companies, would do harm to him there. And at that point, he talked to his immigration lawyer and he filed an asylum application within six months of that time, which is presumptively reasonable under the law of this circuit. Counsel, didn't the immigration judge find that there was no basis for your client's speculation that he'd be harmed if he returned to China? I don't think that the immigration judge said that there was no... So this brings me to another point where the IJ and the BIA erred. They fundamentally misapplied the country conditions reports from China because Mr. Sun's testimony was that he would be protectionally prosecuted and potentially tortured by Chinese authorities who were affiliated with these businesses that he spoke out against while in Guam and previously in China. But it was all speculation, wasn't it? He'd never been tortured. He'd never been threatened. This is all in speculation. He was the victim of several violent events on Guam by men who were affiliated with Chinese companies. But by his employer who had fallen out with his uncle. That's not the kind of thing he is alleging. So these men are tied up with Chinese government-owned businesses, other affiliates, and they will do harm to him in China. Mr. Sun has the very subjective belief of that, and that is corroborated by the country conditions reports, which the IJ failed to see that there are arbitrary arrests, arrests of political dissidents, and laws and regulations that don't adequately protect whistleblowers in the country of China. Those corroborate Mr. Sun's otherwise credible testimony, and because the IJ did not find him to be incredible or uncredible, he's entitled to the presumption on appeal under the immigration nationality, under the INA, that his testimony was credible. The presumption, yes. So taking that credibility presumption and applying the corroborative evidence of the country conditions together with other evidence that Mr. Sun submitted before the IJ, Mr. Sun did have a well-founded fear of future persecution in China. What case would you cite for that proposition? Your Honor, I'm running short on time. I have cases here. I'd like to handle that in rebuttal if I could, since I only have two minutes remaining. Okay, that's fine. Thank you. Good morning. Good morning. May it please the Court, Tracey Jones appearing on behalf of the respondent, United States Attorney General. This Court should deny the position for review because, one, the petitioner has abandoned his claims by voluntarily returning to China. Two, he did not demonstrate that he timely filed his asylum application. And three, in the alternative, the petitioner failed to demonstrate past persecution or a well-founded fear of future persecution on account of a protected ground. Let me ask you about the first thing. Yes. Did I understand you to say that he has now gone back to China? Yes, that is correct, Your Honor. How long ago did that happen? Well, on July 20, 2015, the petitioner filed a letter with this Court indicating his intentions of returning to China. On July 16, 2015, it has been confirmed the petitioner has voluntarily left the United States and returned to China without seeking advance parole. Under the regulations 8 CFR 1208.8, an alien who returns to, who leaves the United States without first seeking advance parole has been deemed to abandon his applications for asylum and withholding of removal. That's the case here. Even if the Court does not find that the petitioner has abandoned his application, the fact that he voluntarily returned to China, the country in which he fears persecution,  So from the government's perspective, we're really kind of wasting our time to hear this case. No, it's not a waste of time, Your Honor. It definitely, he definitely has abandoned his claims, but any concerns of the Court, it's not a waste of time. No, I understand that, but I mean, are you saying it's moot basically at this point? Yes. Okay. Now, moving on. Do we have jurisdiction to hear it? Yes, you do. Now, moving on to the Court's concern in regards to the timeliness issue, if the Court finds that the petitioner did not abandon the application, the petitioner in any event failed to timely file his asylum application. There's no dispute here that the petitioner entered the United States on May 13, 2006, and did not file his asylum application until January 16, 2014. The petitioner is arguing that it was the fact that the petitioner had went to various U.S. agencies in April 2012 to give them information regarding the unfair labor practices of the prior employer that is a changed circumstance that would excuse the time limit on filing and seeking asylum. Counsel, the allegation is that the petitioner would suffer torture and other harm by returning to China. It was highly speculative. Now he's back there. Does the record indicate anything one way or another about whether he has, in fact, suffered any of the harm that he feared? There's no evidence in the record that the petitioner has suffered any of the harm that he feared once returning to China. And after reviewing the record and then also reaching out to the board, there doesn't appear to be a motion to reopen pending before the board with new evidence that he has suffered any harm once he returned to China. Did you say they have done that or they could do that? I'm sorry? You said that they have filed such a motion or they could do that? No. They could do that, but there's no such motion pending before the board right now. From our end, the government's perspective, if the petitioner, since he's back in China, had in fact suffered any of the harms that he feared, his counsel could file a motion to reopen and seek to introduce that evidence, right? Yes, that's correct. That did not happen. Correct, Your Honor. Moving on with the timeliness issue, the petitioner argues that because he whistle-blew on his prior employer in April 2012 that that was a changed circumstance. However, there's no evidence of that. At the time that the petitioner was seeking a law certification from a law enforcement certification for his U visa request, the petitioner was represented by counsel. So, therefore, there's no evidence in the record that the petitioner was not aware at that time that he was actually able to seek asylum. Petitioner attempts to argue that in July of 2013 is when he first became aware of the fact that he could seek asylum after being arrested by ICE. However, once again, the petitioner had counsel who diligently helped him report the unfair labor practices of his former employer to the different agencies. So it's unclear as to why the petitioner would then wait from July 2013 to January 2014 to seek asylum. Although the petitioner tries to argue that this is a reasonable delay, it's not, especially since counsel was retained in this case. Also, moving on to the actual merits of his asylum application, which is his past persecution and well-founded fear claim, there's no evidence that the petitioner submitted that supports a finding that he's eligible for asylum. Petitioner raises four different claims for seeking asylum. One, economic deprivation as a result of his lawsuit that he brought against the hotel that he worked for in Beijing. Two is that he suffered persecution at the hands of his prior employers in Guam. Three, that because he had a child out of wedlock, he will suffer economic deprivation. And four, because of his whistleblowing, which could be construed as a political opinion,  all these claims does not have substantial evidence in the record to support them. First, looking at the first claim regarding his economic deprivation, be based on the lawsuit that he had filed against the hotel in Beijing. One, this occurred in 2003. There's no evidence in the record that the petitioner suffered any economic deprivation. He was able to obtain a county license, he was able to attend a government university, and he was able to gain employment, which he voluntarily resigned from. Petitioner's claim is further weakened by the fact that he was able to file this lawsuit and actually have his, have due process in Chinese government, I'm sorry, in Chinese court in regards to his claims against his prior employer. Second, the petitioner claims he suffered both past persecution and has a well-founded fear of future persecution on the fact that he had suffered persecution in Guam. There's no, there's no doubt that past persecution in the United States or persecution that occurred in the United States cannot be past persecution in the country that the petitioner is fearing returning. In this instance, the incidents that occurred in Guam had occurred between 2008 and 2009. The petitioner clearly indicated in his opening brief that these incidents all began after his uncle refused to give one of the managers at Legendstone, which was the prior employer, a free condominium. So these incidents does not demonstrate past persecution on account of a protected ground, and that's the government's position. These incidents against the prior, the prior employer are all based on personal retribution and not based on a personal blowing. The other two, sorry, the other two claims, one being the birth of his child out of wedlock. This occurred in October 29th, 2011. The petitioner claims that his child would not be able to be registered with a family. He was ever fined for having this child out of wedlock. He did indicate that the child, that the Chinese government would order fines, but at no point in time did he present any evidence that such an order was implemented. Also, the petitioner's fiancee's letter failed to mention any fines that was imposed against her. Therefore, the petitioner has failed to show that the birth of his daughter out of wedlock also constituted past persecution or that he has a fear of future persecution on that claim. Therefore, based on the evidence in the record, the petitioner has failed to show that he's eligible for asylum and the court should deny the position for review. Thank you. Thank you, Your Honors. Your Honor, I ask for a case that supports the proposition that we should take country conditions together with credible testimony, and I'd submit Ahmed v. Kiesler, which is cited. Well, what I asked for was a case that said that you're entitled to a presumption of truthfulness or accuracy if you make this statement and it's not contradictory. So on appeal, that is the presumption, and that is in the Real I.D. Act of 2005 that says where no adverse credibility determination is explicitly made, there's a presumption of credibility on appeal. Real I.D., okay. Can you address government counsel's representation as to his voluntary return to China and the mootness issue? Yes, Your Honor. So first, the government did not make the argument that this case was moot in their return to China, and we acknowledge that in our brief as well, in our reply. Actually, no, it wasn't in our reply. It was in a footnote to our opening brief. However, Mr. Sun's application, first we would argue that the government has waived that argument by not making it in its briefing. And second, there's a Sixth Circuit decision in Harmon v. Holder that was cited in our briefing that holds that an asylum application does remain ripe even if the person is returned to their home country, first because there is continuing injury from the order of removal, and second, because there is a five-year ban on reentry that they will still not be able to come back to the United States for five years. So this case does remain ripe for this Court to consider. I have about 30 seconds left. I just wanted to make the final point that Mr. Sun only needs to establish that a political motive and persecution on a protective ground was one reason and one central reason for why he was persecuted, and he's done that here through his testimony. The government and the IJA and the BIA have dismissed these actions as mere personal dislike. However, they're more than that. These are criminals who are connected to the Chinese government and government-owned enterprises, and they do seek to do harm to Mr. Sun upon his return to China. The evidence shows that below. Thank you, Your Honors. Thank you both for your argument. We appreciate it. The case just argued is submitted.
judges: M. Smith, Nguyen, Bennett